336 A.2d 888
**COMMONWEALTH of Pennsylvania**
**v.**
**Tyrone DAVIS, Appellant.**

Supreme Court of Pennsylvania.

Argued Nov. 15, 1974.

Decided March 18, 1975.

Rehearing Denied May 19, 1975.

28

Burton A. Rose, Philadelphia, for appellant.

F. Emmett Fitzpatrick, Jr., Dist. Atty., Richard A. Sprague, 1st Asst. Dist. Atty., Steven H. Goldblatt, Asst. Dist. Atty., Chief, Appeals Div., Mark Sendrow, Bonnie Brigance Leadbetter, Asst. Dist. Atty., Abraham J. Gafni, Deputy Dist. Atty. for Law, Philadelphia, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

O'BRIEN, Justice.

Appellant, Tyrone Davis, was convicted by a jury of murder in the second degree. Post-trial motions were denied and appellant was sentenced to a term of six to fifteen years' imprisonment. This appeal followed.

This appeal arises from the homicide of Vanessa Davis, wife of appellant, on November 12, 1972, in Philadelphia.

The facts surrounding this homicide and confession are as follows: On November 12, 1972, appellant's wife was found dead of multiple stab wounds. Pursuant to the investigation of this homicide, appellant was interviewed at the Police Administration Building on November 12, 1972, the night of the homicide, and again on January 13, 1973. Detective Brown, who was in charge of the investigation, testified that the interviews with appellant were for the purpose of obtaining background information on his wife. At the end of each interview, appellant was allowed to return to his home. On March 29, 1973, at 7:00 a. m., the police arrived at the residence of appel-

lant and asked to speak to him. Appellant was taken to the Police Administration Building, arriving at 7:25 a. m. The police took appellant into an interrogation room, warned him of his *Miranda* rights, and at 7:45 a. m. appellant confessed the homicide of his wife.

■ Appellant first argues that his confession should have been suppressed because it was the product of an illegal arrest. Assuming *arguendo* that appellant was illegally arrested, we are nevertheless of the opinion that appellant's confession was admissible, because the confession was not the product of the illegal arrest, but rather an independent act of his own free will.

The testimony of appellant establishes the reason for his confession was not police interrogation; rather, it was his own sense of remorse. Appellant's confession shows in two instances that remorse or conscience motivated his confession rather than his alleged illegal arrest. In his formal confession, appellant told police that he was confessing "because it is bothering me. I want to get it off my mind." [1] At trial, appellant contested the voluntariness of his confession, but the jury resolved the issue against him. Finding the motivation for appellant's confession as being his own remorse rather than the police interrogation, we find his confession was voluntary. Cf. *Commonwealth v. Daniels*, 455 Pa. 522, 317 A.2d 237 (1974). See also *Commonwealth v. Bishop*, 425 Pa. 175, 228 A.2d 661 (1967).

■■ Appellant next argues that the court erred in permitting the district attorney to cross-examine him regarding a statement that he made to his mother-in-law related to his want of affection for his deceased wife. We do not agree. Evidence tending to show want of affection for one's wife is admissible to show motive on the part of the husband charged with the homicide of his

---

1. Significantly, the alleged illegality does not question the veracity of the contents of the confession.

wife. See *Commonwealth v. Littlejohn*, 433 Pa. 336, 250 A.2d 811 (1969) and *Commonwealth v. Westwood*, 324 Pa. 289, 188 A. 304 (1936). Having found the above testimony relevant, we also find no error in the district attorney's reference to the evidence in his closing argument to the jury.

Appellant argues, based on our decision in *Commonwealth v. McCusker*, 448 Pa. 382, 292 A.2d 286 (1972), that since he introduced psychiatric evidence which tended to prove that he acted out of the heat of passion at the time he murdered his wife, the homicide, as a matter of law, could rise no higher than voluntary manslaughter. We do not agree. In *McCusker, supra,* we held that psychiatric evidence was admissible only to show that a person acted out of the heat of passion at the time he committed the homicide, but that psychiatric evidence, like any other evidence, was for the jury to consider and to determine what weight it should be given. In the instant case, the jury obviously rejected the psychiatric testimony presented by appellant and they were, therefore, left with ample evidence to convict appellant of murder in the second degree.

Judgment of sentence affirmed.

ROBERTS, J., filed a dissenting opinion in which MANDERINO, J., joins.

POMEROY, J., filed a dissenting opinion.

ROBERTS, Justice (dissenting).

The majority's misunderstanding of the doctrine of "the fruit of the poisonous tree" has led it to approve a blatant violation of appellant's constitutional rights. Appellant's confession was the product of an illegal arrest and thus should not have been admitted into evidence. Therefore, I dissent.

It is a fundamental right of every person to be free from arrest unless there is probable cause to believe that he has committed a crime.\* U.S.Const. amend. IV; Pa.

---

\* In its ruling on appellant's post-trial motions, the trial court stated:

> "In many [homicide] cases proper investigation requires interrogation of persons against whom probable cause for arrest has not been established but who are, nevertheless, suspects, or at least material witnesses. In our view, in light of the importance to the public of solving cases of murder, the right of the police to question such persons within proper safeguards outweighs the absolute right of the individual to be free from such interrogation in the absence of probable cause for arrest."

This breathtaking assertion is nothing less than a repudiation of the Fourth Amendment as it applies to arrests. It is absolutely fundamental to our scheme of liberty that the State is prohibited from depriving a person of his liberty, even if only for investigation, unless there is probable cause to believe that he has committed a crime.

> "[T]o argue that the Fourth Amendment does not apply to the investigatory stage is fundamentally to misconceive the purposes of the Fourth Amendment. Investigatory seizures would subject unlimited numbers of innocent persons to the harassment and ignominy incident to involuntary detention. Nothing is more clear than that the Fourth Amendment was meant to prevent wholesale intrusions upon the personal security of our citizenry, whether these intrusions be termed 'arrests' or 'investigatory detentions.' "

*Davis v. Mississippi,* 394 U.S. 721, 726–27, 89 S.Ct. 1394, 1397, 22 L.Ed.2d 676 (1969) (footnote omitted); see also *Gerstein v. Pugh,* 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975). Exceptions to the requirement of probable cause before detention for investigation are limited in number and very circumscribed in scope, see, e. g., *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

In support of its view, the trial court stated that the requirement of probable cause wrongfully deprives the police of the opportunity "to make what they consider necessary and reasonable investigations of homicides," adding:

> "From our experience, we conclude that many police officers do not know that probable cause for arrest is a legal mandate and believe that they have the right to 'take in for investigation' suspects, even in less serious cases."

It would be the complete destruction of our constitutional liberties to find justification for the deprivation of rights in the ignorance of the police; of course it is not a justification. Ignorance of rights is not even a defense in a civil proceeding seeking damages for the violation of rights, see *Wood v. Strickland,* 420 U.S. 308, 321, 95 S.Ct. 992, 1000, 43 L.Ed.2d 214 (1975) ("[A]n act violating a student's constitutional rights can be no more justified

Const. art. I, § 8, P.S. In this case, appellant's right was violated. As the trial court concluded in overruling appellant's post-trial motions,

"[W]hen the police officers took the defendant in a police patrol car to homicide headquarters for questioning, probable cause for arrest did not exist and the arrest was therefore unlawful. At that time, the police were acting solely on the basis of an anonymous 'tip' . . . ."

It is equally fundamental that evidence, including confessions, that is a product of an unlawful arrest is not admissible in a criminal trial. *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). The majority concludes that appellant's confession was nevertheless admissible. Finding the "reason" or "motivation" for appellant's confession to be "remorse or conscience," the majority apparently determines that it is " 'sufficiently an act of free will,' . . . despite the illegality of the arrest." *Commonwealth v. Bishop*, 425 Pa. 175, 183, 228 A.2d 661, 666 (1967) ; see *Wong Sun v. United States*, supra, 371 U.S. at 486, 83 S.Ct. at 416. This is fundamentally wrong.

Courts have always been suspicious of claims of "acts of free will" in the context of custodial interrogation following an illegal arrest. See, e. g., *Wong Sun v. United States*, supra, at 486, 83 S.Ct. at 416; cf. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Thus, this Court has adhered to the view that a signifi-

by ignorance or disregard of settled, indisputable law . . . than by the presence of actual malice.").

In addition, I am unwilling to accept the proposition that the police are ignorant of basic constitutional guarantees. Large sums of public money have been spent in educating police forces. See, e. g., L. Schwartz & S. Goldstein, Police Guidance Manual No. 4: Patrol—Frisk—Arrest (Philadelphia, 1968), the preparation of which was financed by the Office of Law Enforcement Assistance, United States Department of Justice.

cant objective criterion in determining that a confession is not tainted by an illegal arrest is proof of

> "the intervention of other circumstances subsequent to an illegal arrest which provide a cause so unrelated to that initial illegality that the [confession] may not reasonably be said to have derived from, and thereby tainted by, that illegal arrest."

*Pennsylvania ex rel. Craig v. Maroney,* 348 F.2d 22, 29 (3d Cr. 1965), cert. denied, 384 U.S. 1019, 86 S.Ct. 1966, 16 L.Ed.2d 1042 (1966); see *Commonwealth v. Jackson,* 459 Pa. 669, 676 n. 6, 331 A.2d 189, 192 n. 6 (1975); *Commonwealth v. Richards,* 458 Pa. 455, 327 A.2d 63, 68 (1974); *Betrand Appeal,* 451 Pa. 381, 389, 303 A. 2d 486, 490 (1973); *Commonwealth v. Bishop,* supra, 425 Pa. at 183 n. 7, 228 A.2d at 666 n. 7.

In those cases in which we have held that a confession was purged of the taint of an illegal arrest, we pointed to the intervention of some causal factor, such as the accusation of an alleged accomplice, that is independent of the primary illegality. See, e. g., *Commonwealth v. Wright,* 460 Pa. 247, 252, 332 A.2d 809, 811 (1975); *Commonwealth v. Fogan,* 449 Pa. 552, 557, 296 A.2d 755, 758 (1972); *Commonwealth v. Marabel,* 445 Pa. 435, 448, 283 A.2d 285, 291 (1971); cf. *Commonwealth v. Richards,* supra, 458 Pa. at 466–468, 327 A.2d at 68–69. Factors that are not independent of the arrest, such as the passage of time or police interrogation, have never been held to suffice to render a confession free of taint. See *Commonwealth v. Jackson,* supra; *Commonwealth v. Daniels,* 455 Pa. 552, 317 A.2d 237 (1974); *Betrand Appeal,* supra; *Commonwealth v. Brown,* 451 Pa. 395, 301 A.2d 876 (1973) (opinion announcing the judgment of the Court).

No such intervening independent circumstances are present in this case. Appellant's confession was preceded by nothing but arrest and interrogation. To say that

appellant suffered "remorse" and confessed as a result is merely to say that his will was overborne by interrogation. Unless the Commonwealth can point to some independent intervening circumstances that caused "remorse" or desire to confess, any such "motivation" can be attributed to nothing but the illegal arrest and consequent custody. In short, absent some independent intervening cause, the "remorse or conscience" that leads to a confession is itself the fruit of the illegal arrest. By no stretch of the imagination can it be called an independent cause of the confession.

Furthermore, the majority ignores our settled test of "an act of free will." In *Commonwealth v. Bishop*, supra, Mr. Justice Eagen wrote for the Court:

"By 'sufficiently an act of free will,' we mean that not only was the confession truly voluntary, *but also* free of any element of coerciveness due to the unlawful arrest."

425 Pa. at 183, 228 A.2d at 666 (emphasis original; footnote omitted). A demonstration of mere voluntariness is not sufficient. " ' "[I]f a mere showing that a confession during a period of unlawful detention was 'voluntary' were sufficient to establish its admissibility, *Wong Sun* would be an empty promise, for the inadmissibility of 'involuntary' confessions has long been fully recognized." ' " *Commonwealth v. Whitaker*, 461 Pa. 407, 336 A.2d 603, 608 (1975), quoting *Betrand Appeal*, supra, 451 Pa. at 391–92, 303 A.2d at 491.

In this case, the majority merely concludes that appellant's confession was "voluntary." It does not even attempt to demonstrate (because it could not) that the confession was "free of any element of coerciveness due to the unlawful arrest."

Because the Commonwealth has failed to establish that appellant's confession was free of the taint of his illegal

**36**

arrest and detention, I would reverse the judgment of sentence and grant him a new trial.

MANDERINO, J., joins in this dissent.

POMEROY, Justice (dissenting).

I dissent from the judgment of the Court for the reasons set forth in the concurring opinion of this writer in *Betrand Appeal,* 451 Pa. 381, 392, 303 A.2d 486, 492 (1973). See *Commonwealth v. Jackson,* 459 Pa. 669, 676, 331 A.2d 189, 192 (filed January 21, 1975) (concurring opinion of Pomeroy, J.); *Commonwealth v. Richards,* 458 Pa. 455, 327 A.2d 63, 69 (1974) (dissenting opinion of Pomeroy, J.); *Commonwealth v. Daniels,* 455 Pa. 552, 558, 317 A.2d 237, 240 (1974) (concurring opinion of Pomeroy, J.).