J-S68018-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| TANYA L. LOCKS | |
| Appellant | No. 3321 EDA 2013 |

Appeal from the Judgment of Sentence June 28, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0002084-2012

BEFORE:  ALLEN, J., JENKINS, J., and MUSMANNO, J.

MEMORANDUM BY JENKINS, J.:                **FILED NOVEMBER 14, 2014**

Tanya Locks pled guilty to one count of murder generally[1] and one count of possession of an instrument of crime ("PIC")[2].  The court held a degree of guilt hearing to determine the degree of murder or manslaughter[3], and it found Locks guilty of third-degree murder[4].  The court sentenced Locks to concurrent terms of 8½--17 years' imprisonment for third degree murder and 6 months--2 years' imprisonment for PIC.  Locks filed timely post-sentence motions, which the court denied, and a timely appeal.  Locks and the court complied with Pa.R.A.P. 1925.

---

[1] 18 Pa.C.S. § 2502.
[2] 18 Pa.C.S. § 907.
[3] 18 Pa.C.S. § 2503.
[4] 18 Pa.C.S. § 2502(c).

In this appeal, Locks argues that the evidence was insufficient to prove that she committed third degree murder instead of voluntary manslaughter, and, in the alternative, the finding of third degree murder was against the weight of the evidence. We affirm.

We first address Locks' challenge to the sufficiency of the evidence adduced during her degree of guilt hearing. The trial court accurately summarized the evidence as follows:

> At [Locks'] degree of guilt hearing, [Locks] stipulated to all of the facts presented by the Commonwealth. N.T. 4/11/2013 at 31, 36. The Commonwealth presented, by stipulation, the testimony of Dr. Sam Gulino and Philadelphia Police Officers Brian Stark, Stacey Valentine, and Howard Lee. The Commonwealth also offered, by stipulation, [Locks'] confession to police on the day of the killing. Viewed in the light most favorable to the Commonwealth as the verdict winner the evidence established the following.
>
> On December 10, 2011, at approximately 3:30 a.m., [Locks] returned to her home at 4451 North Franklin Street after a night out drinking with friends. N.T. 4/11/2013 at 60-61. When she arrived home, [Locks] encountered Anita McKeithan [the victim], her girlfriend of 13 years, with whom she lived. N.T. 4/11/2013 at 62. As the two women stood in the living room, [the victim] asked [Locks] where she had been, and [Locks] told her she had been out drinking with friends. N.T. 4/11/2013 at 62. [the victim] began 'swinging on' [Locks], punching her four or five times. N.T. 4/11/2013 at 62-63. [Locks] went to the refrigerator, which was in the living room, retrieved a carton of eggs, and began throwing the eggs at [the victim]. N.T. 4/11/2013 at 63. [Locks] then ran into the kitchen and grabbed two knives. N.T. 4/11/2013 at 63. [The victim] fled

upstairs, with [Locks] chasing her. N.T. 4/11/2013 at 63.

When the two women reached the top of the stairs, [the victim] swung at [Locks], and [Locks] stabbed [the victim] in the chest. NJ. 4/11/2013 at 63-64. [The victim] fell to the ground, and [Locks] went outside and asked a friend to call the police. N.T. 4/11/2013 at 64. [The victim] was pronounced dead at the scene. N.T. 4/11/2013 at 54. She had sustained two stab wounds to the chest one with a depth of three to four inches, and one more superficial wound. N.T. 4/11/2013 at 54-56. The deeper wound to the chest caused her to bleed to death within one to two minutes. N.T. 4/11/2013 at 55. [The victim] also had defensive wounds to her hands. N.T. 4/11/2013 at 56-57.

[Locks] was arrested and gave a statement to the police. N.T. 4/11/2013 at 59-66. When asked by detectives why she chased [the victim] up the stairs with the knives, instead of letting [the victim] run away from her, [Locks] responded, '[c]ause she was talking shit, to be honest with you....Bullshit. She was calling me a punk bitch and things like that.' N.T. 4/11/2013 at 66.

Trial Court Opinion, pp. 2-3.

A brief summary of the procedure for degree of guilt hearings will place Locks' challenge to the sufficiency of the evidence in proper context. Pennsylvania Rule of Criminal Procedure 590 provides in relevant part:

In cases in which the imposition of a sentence of death is not authorized, when a defendant enters a plea of guilty or *nolo contendere* to a charge of murder generally, the degree of guilt shall be determined by a jury unless the attorney for the Commonwealth elects to have the judge, before whom the plea was entered, alone determine the degree of guilt.

Pa.R.Crim.P. 590(c). A plea to murder generally is not the same as a regular guilty plea:

> A plea of guilty to murder generally is a unique plea, unlike anything else provided in statute or decisional law. It appears to be like a guilty plea because the defendant concedes at least some level of guilt. But the option of proceeding under Rule 590(c) is not the same as a defendant pleading guilty to the charges filed against her. In a guilty plea, no evidence is presented against the defendant. The judge in her colloquy merely assures that the defendant is aware of the facts underlying the plea. A Rule 590(c) proceeding, on the other hand still requires the presentation of evidence, the arguments of counsel and the finding of facts in support of a verdict. As a practical matter, the procedure set out in Rule 590(c) is akin to a bench or waiver trial. The criminal defendant first waives her right to be tried by a jury. Thereafter, evidence is presented against her by the district attorney and her counsel advocates on her behalf *via* testimony, argument or both. At the end of this proceeding, a verdict is rendered by the court. The Rule in essence provides for a form of a waiver trial for the defendant facing murder charges.

**Commonwealth v. Passmore**, 857 A.2d 697, 710 (Pa.Super.2003) (citations omitted). In a degree of guilt hearing, the trial court determines whether the homicide was murder of the first, second, or third degree, or voluntary manslaughter[5]. *Id*. at 710 (citing **Commonwealth v. Myers**, 392 A.2d 685, 687 (1978)).

---

[5] Neither **Myers** nor **Passmore** explains why the court should consider *voluntary manslaughter* as a potential verdict in a degree of guilt hearing when the defendant enters a guilty plea to *murder generally*. Nevertheless, we consider this procedure logical. Our Supreme Court has held that a
*(Footnote Continued Next Page)*

- 4 -

In this case, the parties agreed that the appropriate verdict was either third degree murder or voluntary manslaughter. The Commonwealth did not seek a verdict of first or second degree murder. Our standard of review for a challenge to the sufficiency of the evidence in a degree of guilt hearing is the same as a challenge to the sufficiency of the evidence in any other criminal trial:

> [W]hether[,] viewing all the evidence admitted at trial in the light most favorable to the [Commonwealth as the] verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence.

*Commonwealth v. Troy*, 832 A.2d 1089, 1092 (Pa.Super.2003) (citations

omitted); *see also Passmore*, *supra*, 857 A.2d at 706 (analyzing evidence

_____
*(Footnote Continued)*

defendant charged with murder is entitled to a jury instruction on voluntary manslaughter when the evidence reasonably supports such a verdict. *Commonwealth v. Cox*, 686 A.2d 1279, 1291 (Pa.1996). Analogously, in a degree of guilt hearing, the court should determine whether to find the defendant guilty of voluntary manslaughter instead of murder when the evidence reasonably supports this degree of guilt.

adduced during degree of guilt hearing under sufficiency of the evidence standard).

Third-degree murder has been defined as a killing done with malice that was "neither intentional nor committed during the perpetration of a felony." *Commonwealth v. Reilly*, 549 A.2d 503, 510 (Pa.1988). The requisite malice for a third-degree murder conviction exists "where there is a wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty." *Commonwealth v. Tielsch*, 934 A.2d 81, 94 (Pa.Super.2007). Proof that a defendant acted with malice in killing a victim may be found from the circumstances attendant to the killing. *Commonwealth v. Geiger*, 944 A.2d 85, 90 (Pa.Super.2008) (citations omitted). Malice may also be inferred through circumstantial evidence such as the use of a deadly weapon upon a vital part of the victim's body. *Commonwealth v. Arrington*, 86 A.3d 831, 840 (Pa.2014).

In contrast, a "person who kills an individual without lawful justification commits voluntary manslaughter if at the time of the killing he is acting under a sudden and intense passion resulting from serious provocation by (1) the individual killed[.] ..." 18 Pa.C.S. § 2503(a). An objective standard determines whether the provocation was sufficient to support the defense of "heat of passion" voluntary manslaughter. *Commonwealth v. Miller*, 987 A.2d 639, 650 (Pa.2009); *see also* 18

Pa.C.S. § 2301 (defining serious provocation as "conduct sufficient to excite an intense passion in a reasonable person").  As the Supreme Court has explained, "[t]he ultimate test for adequate provocation remains whether a reasonable man, confronted with this series of events, became impassioned to the extent that his mind was incapable of cool reflection."  *Miller*, 987 A.2d at 650.  It is for the fact-finder to determine whether the act that supposedly incited the defendant actually occurred, and if it did whether it would have incited a reasonable person.  *Commonwealth v. Marks*, 704 A.2d 1095, 1099 (Pa.Super.1997).

Significantly, mere words or slight assault do not constitute sufficient provocation to reduce a killing from murder to manslaughter. *Commonwealth v. Whitfield*, 380 A.2d 362, 366 (Pa.1977) (trivial dispute over blackeyed peas and leaving a door open was insufficient provocation); *Commonwealth v. Lassiter*, 321 A.2d 902, 905 (Pa.1974) (argument over three dollar bet was insufficient provocation); *Commonwealth v. Cisneros*, 113 A.2d 293, 296 (Pa.1955) (wife's racial slurs to husband emphasized by sticking her finger at his shoulder was insufficient provocation).  As our Supreme Court has stated, "[t]he law of Pennsylvania is clear that no words of provocation, reproach, abuse or slight assault are sufficient to free the party from guilt of murder" by reducing the crime to manslaughter. *Cisneros*, 113 A.2d at 296.

Viewed in the light most favorable to the Commonwealth, the evidence is sufficient to sustain Locks' conviction for third degree murder. The evidence demonstrates that Locks stabbed the victim because the victim's insults angered her. The circumstances of the stabbing -- particularly the use of a deadly weapon against a vital part of the victim's body and the fact that Locks stabbed her over petty insults -- provide sufficient evidence to justify a finding of malice, the *mens rea* of third degree murder. Neither the victim's insults nor her swing at Locks moments before the stabbing reduce Locks' crime from murder to manslaughter. ***Cisneros, supra***.

Locks contends that the trial court misconstrued the evidence by "isolating one event in a continuous chain of occurrences, rather than as a seamless history." Brief for Appellant, p. 16. Locks' version of events is as follows: Locks lived together with the victim for thirteen years as a "loving but volatile" couple, a euphemism for the frequent incidents of domestic violence during their relationship. The victim became violent when she ingested cocaine, and on the night of her death, she was high on both cocaine and alcohol. On the night the victim died, the couple had a violent fight that left their house in ruins, but Locks insists that she stabbed the victim only because the victim punched her in the face at the top of the stairs. As proof, Locks points to her statement to a police detective:

> Q. [Homicide Detective]: Why are you here?
> A. [Locks]: Cause I poked my girlfriend *after she punched me in my face*. When she get high on cocaine she beat on me. . .

- 8 -

Q. After you grabbed the knives and Anita ran away,
why did you chase her down with the knives? Why
didn't you just let her run away?
A. Because she was talking shit, to be honest with
you.
Q. What kind of shit was she talking?
A. Bullshit. She was calling me a punk bitch and shit
like that. *That's when she punched me in the lip*, and
that's when I poked her.

N.T., 4/11/13, pp. 61, 66 (emphasis added).

Locks' argument is flawed for two reasons. First, while the trial court
found that the victim "swung at" Locks at the top of the stairs, it was silent
as to whether the victim made contact. We infer from this silence that the
court concluded the victim did *not* strike Locks. The trial court was free to
make this determination, because as trier of fact, it was free to believe all,
part or none of the evidence. ***Commonwealth v. Kearney***, 92 A.3d 51, 64
(Pa. Super. 2014). By insisting that the victim struck her at the top of the
stairs, Locks erroneously construes the evidence in the light most favorable
to her instead of in the light most favorable to the Commonwealth.

Second, and more importantly, the court was free to believe, and in
fact did believe, that Locks stabbed the victim only because the victim's
insults enraged her. As the court reasoned:

It is true that [the victim] had been drinking and
using cocaine prior to the killing, and that the police
had been called to the women's home for domestic
violence in the past. . .It is also true that, when [the
victim] and [Locks] were downstairs, [the victim] hit
[Locks] several times. . .However, according to
[Locks], the reason that she stabbed [the victim]

was not due to that combination of factors. Rather, by [Locks'] own admission to the police, the reason that she chased after [the victim] and stabbed her was because [the victim] was taunting her and calling her names.

Trial Court Opinion, p. 4. Viewed in the light most favorable to the Commonwealth, the record supports these findings. And as discussed above, the determination that Locks stabbed the victim in a vital organ based on petty insults provides sufficient evidence of Locks' guilt for third degree murder.

In her second argument on appeal, Locks contends that her conviction is against the weight of the evidence. We disagree.

The law pertaining to weight of the evidence claims is well-settled. The weight of the evidence is a matter exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. *Commonwealth v. Forbes*, 867 A.2d 1268, 1273–74 (Pa.Super.2005). "Our purview is extremely limited and is confined to whether the trial court abused its discretion in finding that the jury verdict did not shock its conscience. Thus, appellate review of a weight claim consists of a review of the trial court's exercise of discretion, not a review of the underlying question of whether the verdict is against the weight of the evidence." *Commonwealth v. Knox*, 50 A.3d 732, 738 (Pa.Super.2012). An appellate court may not reverse a verdict unless it is

so contrary to the evidence as to shock one's sense of justice. *Forbes*, 867 A.2d at 1273–74.

In our opinion, the trial court acted well within its discretion in finding that its verdict of third degree murder did not shock its conscience. Locks would have us conclude that the trial court myopically focused on the moment of the stabbing, and that the court ignored the long and turbulent relationship between Locks and the victim or the victim's assault on Locks downstairs that preceded the stabbing at the top of the stairs. We conclude that the court carefully balanced all of the evidence before arriving at its verdict. Notwithstanding the evidence emphasized by Locks, there was other evidence that weighed in favor of third degree murder – in particular, Locks' act of chasing the victim upstairs with two knives in reaction to the victim's insults and Locks' infliction of multiple stab wounds on a vital part of the victim's body, including one stab wound 3-4 inches deep.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/14/2014