## Commonwealth *v.* Grandison, Appellant.

232

Argued September 26, 1972. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*Stephen J. Laidhold,* with him *Morris, Safier & Makoroff,* for appellant.

*Robert L. Eberhardt,* Assistant District Attorney, with him *Carol Mary Los,* Assistant District Attorney, and *Robert W. Duggan,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE NIX, November 17, 1972:

Appellant, Walter Noble Grandison, was indicted on charges of murder and voluntary manslaughter. A motion to suppress certain oral and written statements was denied, and a jury trial commenced on January 24, 1972. Thereafter, appellant was found guilty of first degree murder. After his motion for a new trial was denied, Grandison was sentenced to life imprisonment. This direct appeal follows.

The only question raised on this appeal is whether the trial court erred in denying the appellant's motion to suppress his confession. The pertinent facts may be summarized as follows:

On the evening of August 4, 1971, police officers observed appellant operating a motor vehicle on Dallas Avenue in the City of Pittsburgh without a valid inspection sticker. When the police attempted to stop him the appellant fled and a chase ensued for six or seven blocks. Appellant then lost control of his vehicle, collided with a parked car and was apprehended as he attempted to flee on foot. After being placed under arrest for various violations of The Vehicle Code, appellant was fully advised of his constitutional rights. At this point he indicated that he did not wish to answer any questions and the police ceased all interrogation. Appellant was then transferred to the Identification Division, where it was determined that he was Walter Noble Grandison who was then wanted on charges stemming from the shooting of an Alfred Thomas.[1]

The following morning appellant was taken to an interrogation room where he was advised of the additional charges pending against him. At this time the appellant, after being again advised of his constitutional rights, submitted to questioning on these charges. Shortly thereafter the appellant made an oral confession to the shooting of Alfred Thomas. Subsequently, a formal, typewritten statement was taken from the appellant which he initialed and executed.

Basically, appellant argues that the questioning was not conducted in conformity with the dictates of *Miran-*

---

[1] Thomas was the proprietor of Al's Grocery Store. On July 12, 1971, he was shot in the head during an attempted hold-up, and was taken to Pittsburgh Hospital in critical condition. On September 6, 1971, he expired as a result of this wound.

234

da v. Arizona, 384 U.S. 436 (1966), since he was questioned by homicide detectives ten hours after he had clearly informed the officers who had arrested him that he did not desire to make any statement. Appellant contends, and we agree, that *Miranda v. Arizona, supra,* established the guidelines within which the police must operate when questioning a suspect. The United States Supreme Court specifically stated that "[i]f the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. At this point he has shown that he intends to exercise his Fifth Amendment privilege; any statement taken after the person invokes his privilege cannot be other than the product of compulsion, subtle or otherwise. Without the right to cut off questioning, the setting of in-custody interrogation operates on the individual to overcome free choice in producing a statement after the privilege has been once invoked." 384 U.S. at 473-74 (footnote omitted).

Notwithstanding the express mandates of *Miranda,* we believe that there was a substantial change in circumstances which rendered further questioning by police permissible regardless of appellant's initial refusal to make a statement. There is no question that appellant's refusal to answer questions on the evening of August 4, 1971, with respect to alleged violations of The Vehicle Code precluded further questioning at that time concerning that subject. However, when the police learned of appellant's identity and of the additional charges pending against him it was proper for them to confront him with these matters. Moreover, the record supports the conclusion that appellant was adequately advised of his constitutional rights and voluntarily changed his mind and submitted to questioning. Under these circumstances, the challenged statements were properly admitted as evidence at trial.

We were confronted with a similar situation in *Commonwealth v. Jefferson,* 445 Pa. 1, 281 A. 2d 852 (1971), and we determined that after the victim died "the nature of the criminal charges confronting Jefferson, while arising out of the same circumstances, changed substantially, and the possible consequences became much more serious. Certainly, the police did nothing constitutionally impermissible in alerting him to these facts. And, we are not persuaded that the mandates of Miranda were violated when the police sought to determine if Jefferson, in view of the changed situation, was willing to talk without a lawyer being present." 445 Pa. at 6, 281 A. 2d at 855. Similarly, the circumstances of the instant case substantially changed when the police ascertained appellant's true identity and learned that he was wanted for assault with intent to kill.[2]

Judgment of sentence affirmed.

[2] At the time of the custodial interrogation the deceased was still alive.