426 A.2d 130
**COMMONWEALTH of Pennsylvania**

**v.**

**Fred I. BUNTING, Appellant.**

Superior Court of Pennsylvania.

Argued March 10, 1980.

Filed Feb. 20, 1981.

Thomas G. Klingensmith, Assistant Public Defender, Lancaster, for appellant.

Ronald L. Buckwalter, District Attorney, Lancaster, submitted a brief on behalf of Commonwealth, appellee.

Before SPAETH, BROSKY and VAN der VOORT, JJ.

VAN der VOORT, Judge:

Appellant was found guilty by a jury of four counts of Terroristic Threats (18 Pa.C.S. § 2706).

He raises three arguments on this appeal.

1. Appellant's first argument is that the statute is "unconstitutionally vague."

The language of the section is as follows:

"A person is guilty of a misdemeanor of the first degree if he threatens to commit any crime of violence with intent to terrorize another or to cause evacuation of a building, place of assembly, or facility of public transportation, or otherwise to cause serious public inconvenience, or in reckless disregard of the risk of causing such terror or inconvenience."

Appellant's argument is that a criminal statute must give fair notice to a person of ordinary intelligence that his contemplated conduct is forbidden by statute: *U. S. v.*

*Harris*, 347 U.S. 612, 617, 74 S.Ct. 808, 98 L.Ed. 989 (1954); that this statute has been declared unconstitutional by Judge Chalfin of the Philadelphia Court of Common Pleas in *Commonwealth v. Howell*, 1 Pa. D. & C. 3d 644 (1976); and that the constitutional question has not heretofore been raised at the appellate level although convictions under the statute have been sustained[1] without discussion of the constitutional question.

■ The trial judge rejected the appellant's argument below and held that on the facts developed in this case, "the section is sufficiently direct, precise and informative to comply with constitutional requirements." Citing *Commonwealth v. Heinbaugh*, 467 Pa. 1, 354 A.2d 244 (1976); and *Commonwealth v. Hughes*, 468 Pa. 502, 364 A.2d 306 (1976).

We agree. In this present case the applicable words of the statute are: ". . . if he threatens to commit any crime of violence with intent to terrorize another . . ."

Here the alleged threats were made to township officials and to neighbors. Specifically, appellant was alleged to have threatened:

1) to bomb the house of the chairman of the township board of supervisors;

2) that it would not be healthy for a neighbor if he caught such neighbor in the field; he would get the neighbor and his son;

3) a zoning officer that he was going to get a gun and go after the zoning officer; and

4) "to arrange a legal accident to wipe out" a neighbor's mother.

These threats seem to us to come within the language of the statute and that the statute reasonably gives notice to a person of average intelligence that such threats are proscribed by the statute.

1. *Commonwealth v. Willie*, 246 Pa.Super. 400, 371 A.2d 899 (1977); *Commonwealth v. Campbell*, 244 Pa.Super. 505, 368 A.2d 1299 (1976); *Commonwealth v. White*, 232 Pa.Super. 176, 335 A.2d 436 (1975).

448

■ II. The second argument is that the evidence was insufficient to prove that the persons who were targets of the threats were placed in terror. Appellant claims that his victims experienced no fear and terror but instead developed only concern for the safety of themselves and others. He argues that since the victims lacked knowledge concerning his ability to carry out the threats they could not have been placed in terror. We reject appellant's attempt to remove this "concern" from inclusion of the statute. The lower court found the evidence of terror sufficient and we agree. The opinion of the lower court, denying post trial motions follows in part:

"Evidence of the reaction of the individuals to the threats has been presented. Although none of them stated that he was 'in terror,' there is testimony of fear of consequences. Terror has been defined as intense fear. The witnesses may not have articulated the intensity of their fear. The determination of the intensity and whether the fear expressed was of the magnitude of terror was for the jury."

III. Appellant argues reversible error in the admission of evidence of appellant's silence after arrest.

The charges in this case resulted from conversations between appellant and the victims. A state trooper testified that after the appellant had been placed under arrest, and had been given his *Miranda* rights, appellant proceeded to give an oral statement. The state trooper read the written account of the statement into the record, concluding with:

"That is the extent of the statement.
I asked him about his conversations with Book—I am sorry, with the Zooks; however, there was nothing said pertaining to those conversations." N.T. at 133.

Appellant's trial counsel made a motion for a mistrial. After a brief discussion on the record and a review of the testimony the court denied the motion. The district attorney continued his direct examination.

DISTRICT ATTORNEY:

"Q.  Corporal Harnish, was there any subsequent conversations with Mr. Bunting relative to this matter?

A.  Nothing of significance.

Q.  Thank you.

DISTRICT ATTORNEY: I have no further questions.

DEFENSE ATTORNEY: Your Honor, I have to renew the same motions all over again.

THE COURT: They are denied."

N.T. at 134–135.

■  Appellant now claims that under *Commonwealth v. Williams*, 252 Pa.Super. 435, 381 A.2d 1285 (1977), the admission of "evidence of a defendant's silence at the time of arrest is reversible error." Such a reference is not, however, automatic justification for a new trial. *Commonwealth v. Maloney*, 469 Pa. 342, 365 A.2d 1237 (1976); and *Commonwealth v. Quartman*, 253 Pa.Super. 460, 385 A.2d 429 (1978). To reach appellant's conclusion we must proceed through a three tier examination. First the reference must have been improper. Next, if the reference was improper, this court must find that a curative instruction would not have negated the inference left by such reference. Finally, if an instruction could have remedied the harm but was not given, we must find that the lower court and trial counsel could not have reasonably concluded that an instruction would reinforce the inference of guilt in the minds of the jurors.

■  Reading the text of the state trooper's testimony, we observe no improper reference to appellant's partial silence. The state police testified that appellant made a statement concerning two of the charges. Such a statement by itself indicates that he did not converse concerning the other two counts. Every statement must end at some point; here appellant terminated his statement after giving his version of two of the four conversations. We can find no additional harm resulting from the testimony that appellant only discussed the two counts of terroristic threats. Appellant would have suffered the same detriment, if any, had the trooper concluded his testimony with, "[t]hat was the extent

of the statement." *Williams* involved a situation where a police officer testified that a suspect had given his version of how he came in possession of a stolen car. He then elected to remain silent. In *Commonwealth v. White*, 482 Pa. 197, 393 A.2d 447 (1978), the defendant after giving a statement, said that he had already hurt himself enough and was not going to say anymore. While in *Commonwealth v. Singletary*, 478 Pa. 610, 387 A.2d 656 (1978) the testimony indicated that on advice of counsel, defendant would not make a statement to the police. The present statement is distinguishable from these previous cases; it was not improper. There was no testimony that appellant exercised his prerogative to remain silent. Instead the jury was led to believe that the conversation continued, but had no importance as to the present charges.

Even assuming that the reference was improper, a proper curative instruction would have remedied any possible prejudice to appellant. Justice Eagen's opinion announcing the judgment of the court in *Commonwealth v. Maloney*, supra,[2] established a two prong test for determining whether a curative instruction would remove the possible harm.

In making this decision, the following will be important considerations but not necessarily exclusive: (1) the nature of the reference, particularly, whether it was a specific comment on the accused's silence at trial or at the time of arrest or whether it was, as in *Commonwealth v. Ross* [403 Pa. 358, 169 A.2d 780], supra, merely a reference to the fact that incriminating evidence of the Commonwealth was undenied or uncontradicted; and (2) whether the accused's silence was exploited by the district attorney. 469 Pa. at 349, 365 A.2d 1237.

2. Justice Eagen was joined by two other justices, one justice filed a concurring opinion and two justices filed dissenting opinions. In *Commonwealth v. Singletary*, supra, the court, per Eagen, C. J., indicated that the opinion in *Maloney* was not controlling as it did not command the vote of a majority of the court. The court went on to distinguish *Maloney* from *Singletary*. The court found that in *Maloney* the initial reference was introduced without objection and that the instructions were "more adequate and decisive."

*Maloney* demonstrates that a court should look at the particular circumstances of the case before it. Here, mention of appellant's silence was a reference to the end of appellant's statement; it established the limitations of the statement. The statement was directed to only two of the four counts of terroristic threats; the reference to appellant's failure to comment further was to delineate the scope of his statement. The prosecuting attorney made no direct comment on appellant's invocation of his right to remain silent.[3] Nor did he attempt to exploit such silence. Assuming the reference was improper, we hold that a curative instruction could have adequately protected appellant's interest.

However, the lack of such instruction, under the present circumstances does not justify a new trial. This court was faced with a somewhat similar situation in *Quartman,* supra. There passing references to the defendant's silence were made by two police officers. Defense counsel's objections were sustained but motions for new trial were denied. On appeal *Quartman* argued that such reference to his silence required the granting of a new trial. We found the lower court had not erred in denying a mistrial. We also held that the court's failure to give a curative instruction did not require a new trial. The record there indicated that the trial judge had considered giving such an instruction but decided against giving one for fear that the instruction itself would reinforce in the jury's minds the inference that the defendant was guilty. Counsel for the defendant admitted to having similar reservations. In the present case the record contains no explicit evidence of similar reservations. However, our reasoning in *Quartman* applies to the present case.

> Had counsel desired curative instructions in the instant case, he could have requested them. It is clear that counsel should likewise be permitted to request that the court not give curative instructions 'sua sponte.' In hindsight, counsel's decision to forego curative instructions

---

**3.** The record contains no testimony of appellant invoking his right to remain silent.

may prove to have been a tactical error; it is likewise irremediable. In every case, it is a tactical decision to be made by defense counsel, and the rendering of an unfavorable verdict should not entitle a defendant, who did not elect to protect himself to the maximum in his first trial, to an automatic retrial.

The passing references to appellant's silence in the instant case do not differ in any material respect from those made in *Maloney*. In neither case did the district attorney exploit the appellant's silence. In *Maloney*, counsel opted for cautionary instructions and very adequate ones were given. In the instant case, there is every reason to believe that curative instructions would have negated any possible prejudice to which appellant was exposed. Appellant should have requested instructions himself or objected to the court's charge as failing to instruct on the matter 'sua sponte.' Electing against the available relief at trial, appellant may not now complain of prejudicial error. 253 Pa.Super. at 464, 385 A.2d 429.

As in *Quartman*, here counsel may have had very good reasons in down playing his client's silence. Counsel made no objection to the testimony in question,[4] he also did not request any precautionary instructions. As in *Quartman*, appellant's counsel for sound tactical reasons apparently did not wish to emphasize his client's silence to the jury. Unlike the case of *Commonwealth v. Humphrey*, 473 Pa. 533, 375 A.2d 717 (1977) where counsel failed to object to three references during trial to the defendant's silence and also to the court's reference in its charge to the jury; we do not have such a demonstration of ineffectiveness here. Instead, appellant's counsel made a motion for a mistrial. It was a reasonable tactical decision to avoid any further mention of appellant's silence, irregardless of whether such earlier reference was proper or improper. He is not now entitled to a

4. Appellant's first motion for a mistrial was at sidebar; while his renewed motions were before the jury, they were phrased in such a way as to shield their content from the jury. See reprinted text cited earlier in this Opinion.

new trial because he now wishes to try the tactical alternative.

Judgment of sentence affirmed.

BROSKY, J., files a concurring opinion.

BROSKY, Judge, concurring:

Bunting was convicted of four (4) counts of terroristic threats.[1]  Appropriate post-verdict motions were filed and subsequently denied.  On December 7, 1978, appellant was sentenced to a probationary term of twenty-three (23) months and fined fifty dollars ($50) on each of the four (4) counts.  This appeal followed.

Appellant poses several questions for our consideration. As we see it, they are:  First, whether 18 Pa.C.S. § 2706 is, on its face, unconstitutionally vague?[2]  Second, was there sufficient evidence to convict Bunting of the crime of terroristic threats?  Third, was appellant's request for a mistrial improperly denied?

The circumstances out of which the charges against Bunting arose involved two public officials and two of his neighbors.  All hostility was related to what appellant perceived as an intolerable zoning violation.  The first incident involved John Whiteside, the township zoning officer, who— when unable to resolve Bunting's problems—was confronted by appellant's statement: "I am going to get a gun, I am going to get Harry Peace and then I am coming after you." The second incident occurred during a telephone conversation with Girard Stapleton, a township supervisor, to whom—after Bunting felt his problem was unresolved—ap-

---

1.  18 Pa.C.S. § 2706.

2.  The Common Pleas Court of Philadelphia County has held 18 Pa.C.S. § 2706 unconstitutionally vague in a decision which was not appealed written by Judge Chalfin.  *Commonwealth v. Howell*, 1 Pa. D. & C. 3d 644 (1976).*  Contra: *Commonwealth v. Perry*, 9 Pa. D. & C. 3d 13 (1978).

  * In that opinion, the court focused on the statutory provision involving threats to commit violence with the intent to cause public inconvenience.

pellant said: "I am going to come over and blow up your house and see if you would like all that noise."

The third incident involved Joel Zook—a neighbor—and one of Zook's sons. When Bunting confronted Zook about the zoning problem, Zook's son claims appellant said he had a "high-powered rifle and it's going to be used." And:

He said that if he catches either me or my dad halfway up in the field it won't be good for our health . . . He said that he is going to shoot Harry Peace and then before he gets himself he is going to come down and get my dad.

The final incident focused on Ms. Zook—Joel's wife—about whom Joel's son, Christian, claims appellant said: "He said he sees my mother going up and down the road with her horse and buggy—going to cause a legal accident to wipe her out—[.]"

The Due Process Clause of the Fourteenth Amendment to the United States Constitution is violated if a criminal statute is so vague that it fails to provide reasonable notice to a person who purportedly fails to act in accordance with it.[3] The standard upon which we review a statute for vagueness is:

A criminal statute "that fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute," *United States v. Harriss*, 347 U.S. 612, 617, 74 S.Ct. 808, 812, 98 L.Ed. 989 (1954), or is so indefinite that "it encourages arbitrary and erratic arrests and convictions," *Papachristou v. City of Jacksonville*, 405 U.S. 156, 162, 92 S.Ct. 839, 843, 31 L.Ed.2d 110 (1972), is void for vagueness. See generally *Grayned v. City of Rockford*, 408 U.S. 104, 108–109, 92 S.Ct. 2294, 2298–2299, 33 L.Ed.2d 222 (1972).

*Colautti v. Franklin*, 439 U.S. 379, 390, 99 S.Ct. 675, 683, 58 L.Ed.2d 596 (1979). It is also clear, however,

---

**3.** The appellant properly preserved the question of the constitutionality of this provision on appeal. See contra: *Commonwealth v. Sullivan*, 269 Pa.Super. 279, 409 A.2d 888 (1979); *Commonwealth v. Holguin*, 254 Pa.Super. 295, 385 A.2d 1346 (1978).

The fact that [the legislature] might without difficulty have chosen "clear and more precise language" equally capable of achieving the end which it sought does not mean that the statute which is in fact drafted is unconstitutionally vague." *United States v. Powell*, 423 U.S. 87, 94, 96 S.Ct. 316, 320, 46 L.Ed.2d 228, 235 (1975). Rather, the requirements of due process are satisfied if the statute in question contains *reasonable* standards to guide the prospective conduct.

*Commonwealth v. Heinbaugh*, 467 Pa. 1, 6, 354 A.2d 244, 246 (1976). As appears in *Commonwealth v. Burt*, 490 Pa. 173, 415 A.2d 89 (1980). See, *Connally v. General Construction Co.*, 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322, 328 (1926).

We are also mindful that *allegedly* terroristic threats are frequently made by spoken word. Our First Amendment rights are given greater shelter than all our other rights. Accordingly:

where a statute's literal scope, unaided by a narrowing state court interpretation, is capable of reaching expression sheltered by the First Amendment, the doctrine [of void-for-vagueness] demands a greater degree of specificity than in other contents.[4]

The provisions which Bunting asserts are so vague as to violate due process state:

A person is guilty of a misdemeanor of the first degree *if he threatens to commit any crime of violence with intent to terrorize another* or to cause evacuation of a building, place of assembly, or facility of public transportation, or otherwise to cause serious public inconvenience, or in reckless disregard of causing such terror or inconvenience.

Emphasis added.

We review this record mindful that the disputed position of this statute is that which concerns terroristic threats against another individual.

4. As appears in the opinion of Judge Chalfin at 1 Pa. D. & C. 3d 647.

We hold that portion of the statute when viewed in light of the requirement that a terroristic threat be made to an individual infers that the threatened action be one which is susceptible to immediate action, credible in nature, and made with the intent to cause an apprehension of fear. With this understanding we find:

> This section does not employ "ambiguous" words, "archaic classifications," or words with "numerous and varied" meanings. Compare *Colautti v. Franklin*, supra ("viability" determination requirement of statute regulating physicians' performance of abortions void), *Papachristou v. City of Jacksonville*, supra ("vagrancy" ordinance drafted in terms of archaic English poor laws invalid), and *Lanzetta v. State of New Jersey*, 306 U.S. 451, 59 S.Ct. 618 (1939) (voiding statute making it crime to be member of "gang"). *Accordingly, any vagueness challenge must be rejected.* See *United States ex rel. Almeida v. Rundle*, 383 F.2d 421, 426 (3d Cir. 1967) (upholding former felony-murder statute).

*Commonwealth v. Burt*, supra, 490 Pa. at 178, 415 A.2d at 92.

Consequently, the language in the statute under consideration is not vague and is therefore constitutional.

Appellant next claims there was insufficient evidence for the trial court to convict him of the crime of terroristic threats. We shall review the evidence in a light most favorable to the Commonwealth, in conjunction with all reasonable inferences therefrom, to determine if that evidence was sufficient to prove Bunting's guilt beyond a reasonable doubt. *Commonwealth v. Ilgenfritz*, 466 Pa. 345, 353 A.2d 387 (1976); *Commonwealth v. Fortune*, 456 Pa. 365, 318 A.2d 327 (1974).

The evidence clearly indicates that the appellant intended to terrorize individuals. It can be reasonably inferred from his statement that he sought to frighten the persons listening to him. The evidence presents a description of actions which were capable of immediate action, made under circumstances assuring their credibility and of a nature which indicates an *intention to create* an apprehension of fear.

Appellant contends his actions did not warrant a conviction of terroristic threats because all his statements did not cause his listeners to fear for their own safety. Messrs. Whiteside and Stapleton feared their family's safety and allegedly not their own. This claim has no merit because— as common sense tells us—one may be placed in a state of fear as a result of terrorist remarks directed at their own person or at those persons about whom they care. All other remarks caused reactions indicating the listeners feared for their own physical well being.

We do not by any means wish to diminish the harshness of statements required to be called terroristic by our opinion. Rather, we hold that, after a review of the totality of the evidence, these statements were credibly terroristic.

Finally, Bunting asks us to determine whether his request for a mistrial was improperly denied. The Supreme Court has declared it reversible error to admit evidence concerning the silence of a defendant after an arrest. *Commonwealth v. Greco*, 465 Pa. 400, 350 A.2d 826 (1976). However, this error *if curable* by cautionary instructions will not be grounds for a mistrial. *Commonwealth v. Quartman*, 253 Pa.Super. 460, 385 A.2d 429.

In *Commonwealth v. Williams*, 252 Pa.Super. 435, 439, 381 A.2d 1285, 1289 (1978), the following testimony was admitted involving a police officer and Williams after the arrest was completed:

Q. What did you do having met Mr. Williams?

A. I asked him for his personal identification, name, address, date of birth, inquired as to how he came into possession of a vehicle that he was operating, that of Mr. Rigney's.

Q. Did he tell you how he came in possession of it?

A. He said that on the date prior to that, the 16th, he had found the car parked along a street with the keys in it and took it for a ride.

Q. Then what happened?

A. After that he elected to remain silent.

We held that corrective instructions could not cure the error presented.

The exchange between the arresting officer and appellant in the instant case does not present us with serious error. Officer Carl S. Harnish gave the following testimony when examined by the Commonwealth:

Q. What was the nature of his statement?

A. This statement was taken as much verbatim as possible.

Mr. Hunting stated, I had spoken to Gerald Stapleton at least twenty times last winter. The thing that caused me to call him was that he lied to me twenty times. I don't have a telephone in my house to call him, so I had to go to a pay phone. Each time Stapleton told me that he was giong to do something about my problems, which involved these buildings next door to me, but he never did. So one time I said to Mr. Stapleton, can you tell me the difference if I was to come down and bomb your house, or if someone with a bulldozer comes down outside your house window. I never said anything more than that to him about bombing his house. I never made any heated statements to Mr. Whiteside at all. I only talked to him about business.

That is the extent of the statement.

I asked him about his conversations with Book—I am sorry, with the Zooks; however, there was nothing said pertaining to those conversations.

Emphasis added.

Following objection from defense counsel, Harnish then stated:

Q. Corporal Harnish, was there any subsequent conversations with Mr. Bunting relative to this matter?

A. Nothing of significance.

Q. Thank you.

We hold the error presented us was not so severe as to require a mistrial. The error could have been corrected by cautionary instructions. Such instructions were not request-

ed. Accordingly, this issue has been waived. *Commonwealth v. Quartman*, supra.