443 A.2d 851

**COMMONWEALTH of Pennsylvania**

v.

**Thomas HARRIS, Appellant.**

Superior Court of Pennsylvania.

Argued Nov. 12, 1980.

Filed March 26, 1982.

Petition for Allowance of Appeal Denied Sept. 14, 1982.

John H. Corbett, Jr., Pittsburgh, for appellant.

Dara A. DeCourcy, Assistant District Attorney, Pittsburgh, for Commonwealth, appellee.

Before HESTER, BROSKY and VAN der VOORT, JJ.

VAN der VOORT, Judge:

Appellant was convicted of robbery and sentenced to a term of seven and one half (7½) years imprisonment. On appeal, appellant raises five issues, which we will resolve seriatim. Finding no merit to any of these claims we affirm the judgment of sentence.

I.   On November 10, 1978, at 10:20 a. m., the Pittsburgh National Bank branch office located in the William Penn Hotel in downtown Pittsburgh was robbed by three or four masked, black men, one of whom was armed.   A sum of $11,000 was taken and placed in a yellow pillow case.   During the robbery, a surveillance camera and silent alarm in the bank were activated.   The police responded immediately. Shortly after the occurrence of the robbery a description of the men was transmitted via police radio.

The broadcast reported that the suspects had fled, running through the lobby of the William Penn Hotel.   Two police officers were at the intersection of Bedford Avenue and Crawford Street, several blocks from the bank, when they received the radio information.   These officers spoke with a cab driver whom they had observed a few minutes earlier transporting three or four black men, one of whom was wearing clothing which fit the description broadcasted.   The driver told the officers that he had picked up the passengers behind the William Penn Hotel.   He informed them that he had discharged his passengers near the Connelly Trade School and that they had run down the hillside.

The police moved into the area of the school and quickly apprehended the appellant and two other suspects whom they observed moving in a suspicious manner.   No one else was observed on the hillside.   A yellow pillow case containing some of the stolen money was recovered along with various items of discarded outer clothing, including ski masks which matched descriptions given by witnesses.   The arrests occurred less than one mile from the robbery scene, only 40 minutes having lapsed from the time of the robbery.

Appellant argues that his arrest, based only on a general description was without probable cause.   We disagree.

[It was] held in *Commonwealth v. Brooks*, 468 Pa. 547, 364 A.2d 652 (1976), that probable cause is essential to the legality of arrest, meaning that the facts and circumstances known to the police or about which they have reasonably trustworthy information at the time of the arrest must be sufficient to warrant a person of reasonable

caution in believing the suspect has committed or is committing a crime. The Commonwealth has the burden to establish probable cause with reasonable specificity and mere suspicion is not enough. *Commonwealth v. Jones,* 457 Pa. 423, 322 A.2d 119 (1974). See also *Beck v. Ohio,* 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964). *Commonwealth v. Bartlett,* 486 Pa. 396, 400, 406 A.2d 340 (1979).

In *Commonwealth v. Bynum,* 265 Pa.Super. 13, 401 A.2d 776 (1979), we explained that although general descriptions of a suspect which are equally applicable to large numbers of people will not ususally support a finding of probable cause, . . . each case must be analyzed in light of its own particular circumstances. Among the circumstances which we considered as providing probable cause in that case were the fact that the appellant was arrested at a location and a time close to that of the crime. We also noted that the arrested persons were the only people seen by the police in that area. See also *Commonwealth v. Powers,* 484 Pa. 198, 398 A.2d 1013 (1979).

■ Similarly, under the circumstances present in this case, we find that a person of reasonable caution would be justified in believing the appellant to have committed a crime. See *Commonwealth v. Bartlett,* 486 Pa. 396, 406 A.2d 340 (1979). Appellant was arrested at a place and time close to that of the robbery, he fit generally the description of one of the suspects, he and his companions were the only persons spotted in the area and they were moving in a suspicious manner. A cab driver had taken three men from the scene of the robbery to the locality where the three were arrested.

II. Appellant was arrested at approximately 11:00 a. m. He was questioned by City of Pittsburgh detectives at the Public Safety Building at 11:30 a. m. Appellant indicated that his role in the robbery was to go behind the tellers' counters and remove money from the drawers. He identified a yellow pillow case as one used in the robbery. Before such interview appellant was advised of his constitutional rights; he signed a form acknowledging having been so

advised. (N.T. Suppression, pp. 349–52). This first admission is not challenged.

At approximately 2:20 p. m., appellant was again interviewed, this time by F.B.I. agents. Mr. Harris was again apprised of his rights. At this time appellant denied any participation in the robbery. Upon his request for an attorney, the questioning was terminated. (N.T. Suppression, pp. 436–40).

That same afternoon at approximately 4:30 p. m., appellant was arraigned. Shortly after arraignment, in an attempt to determine who the fourth actor was and to recover an amount of the stolen money still missing, the investigating law enforcement agencies decided to again talk with Mr. Harris. Appellant was again advised of his *Miranda* rights. With detectives of the City of Pittsburgh and agents of the F.B.I. both present, appellant was informed that "bait money" from the bank had been recovered from the scene of the arrest; that various pieces of clothing had been recovered also from the arrest scene which matched the clothing worn by the actors who had robbed the bank; and appellant was shown photographs taken with the bank's surveillance camera. Appellant furnished certain information and then indicated he did not wish to say anymore. He was informed that he could discontinue the conversation whenever he so wished. Instead, appellant pointed himself out in a photograph, indicating he was the one wearing a blue jacket with white stripes. After hesitating he also identified the other actors in the picture. He then declined to continue the discussion and it ceased. (N.T. Suppression, pp. 465–71).

■ Appellant argues that since he had refused to continue the second interview without the presence of an attorney the admission resulting from the display of the photographs should have been suppressed. We disagree.

In *Commonwealth v. Rose*, 265 Pa.Superior Ct. 159, 401 A.2d 1148 (1979), the defendant decided to remain silent and no interrogation took place. Subsequently, the police confronted the defendant with ballistic reports and other facts

which connected him to other crimes. After a second reading of his *Miranda* rights, the defendant relinquished such rights and gave an inculpatory statement. This court found such statement to be admissible. See also *Commonwealth v. Grandison*, 449 Pa. 231, 296 A.2d 730 (1972). We hold likewise in the current case where appellant was informed of additional evidence and *Miranda* warnings were properly re-administered.

Nor do we find that the recent decision in *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981) requires a different result. *Edwards* held that once a suspect invokes his rights to remain silent, the police may not further question him unless he institutes the new discussion. Our Supreme Court implicitly endorsed such a rule in *Grandison* but permitted an exception for permitting the suspect to be advised of new evidence or change in circumstances. Such an exception is especially appropriate here, where the second admission was nothing more than a confirmation of the first confession.

■ III. Mr. Harris urges us to adopt a rule requiring the police to preserve rough notes taken during interviews of defendants. Appellant rests his argument on *U. S. v. Vella*, 562 F.2d 275 (3rd Cir. 1977), where the Third Circuit Court of Appeals established such a role pertaining to agents of the United States. Appellant does not allege violation of Pennsylvania Rules of Criminal Procedure, Rule 305(B) which governs pretrial disclosure by the Commonwealth.

Subsection 305(B)(1)(b) requires the Commonwealth to supply to a defendant:

> any written confession or inculpatory statement, or the substance of any oral confession or inculpatory statement, and the identity of the person to whom the confession or inculpatory statement was made, which is in the possession or control of the attorney for the Commonwealth.

The substance of the rule proposed by appellant would effectively amend the existing Rule. We leave to our Supreme Court any such alteration of the rules which it promulgates.

IV. Appellant complains that a mistrial should have been granted when a Commonwealth witness referred to appellant's request for an attorney. An F.B.I. agent stated that five or six minutes into his interview with Mr. Harris, appellant requested an attorney. Appellant's motion for a mistrial was denied and no curative instruction was requested or given. Appellant claims he was prejudiced by an inference of guilt arising from his request for an attorney.

Such a reference does not automatically require a new trial. Instead, a new trial is only necessitated where an improper comment was not curable by curative instruction or where it is curable but such was not given *and* the trial court and trial counsel could not reasonably conclude that such would reinforce the inference. In the context of this current case, we find that a curative instruction could have negated the inference, but instead counsel failed to request such instruction, possibly concluding reasonably that such would reinforce the inference. *Commonwealth v. Bunting*, 284 Pa. Superior Ct. 444, 426 A.2d 130 (1981). As appellant did not request a curative instruction, he may not on this appeal complain of prejudicial error. *Commonwealth v. Humphreys*, 267 Pa. Superior Ct. 318, 406 A.2d 1060 (1979). See also the discussion in part V of this opinion.

V. Finally, appellant complains of a statement made by a detective on direct examination. The detective was relating the substance of an interview conducted with the appellant. He stated that he had indicated to Mr. Harris that the evidence was "stacked up against him." Defense counsel objected and requested a mistrial; the request was denied. The court ordered the statement stricken and instructed the jury to disregard it (N.T. Trial, pp. 514–515). Appellant complains that a mistrial should have been granted and that the curative instruction tended to reinforce the remark in the minds of the jury.

We believe that the alleged prejudicial comments must be evaluated with regard to the circumstances of each trial, including, but not limited to: the nature of the

comment, the person to whom the alleged prejudicial comment was directed, the identity of the person making the comment, and if a witness, the importance of that witness' testimony to either the Commonwealth's or defense's case, and whether the court gave immediate cautionary instructions if it deemed the remark prejudicial. *Commonwealth v. Grant*, 479 Pa. 74, 82, 387 A.2d 841 (1978). The appropriate action to be taken, after evaluating the circumstances of each case rests in the discretion of the trial judge. *Commonwealth v. Silvis*, 445 Pa. 235, 284 A.2d 740 (1979); *Commonwealth v. Taliaferro*, 273 Pa. Superior Ct. 151, 417 A.2d 213 (1979).

Evaluating the present case in light of *Grant* and the other cases we find the following. First, as to the court's instruction to disregard, we find it highly unlikely that it could reinforce any possible prejudice; the court's instruction was curt and without explanation. Furthermore, the four word comment in question, is the only comment (except for the one discussed in part IV of this opinion) complained of in over six hundred pages of testimony and the charge to the jury. It was clearly an isolated passing reference volunteered by the witness and not responsive to the question. In these circumstances we fail to find an abuse of the lower court's discretion in denying the motion for a mistrial. See also discussion in part IV infra.

Judgment of sentence affirmed.

BROSKY, J., files a dissenting opinion.

BROSKY, Judge, dissenting:

I respectfully dissent. I believe that the incriminating statements made by appellant during his third interview on November 10 should have been suppressed.

In *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), the U. S. Supreme Court held,

. . . [W]e now hold that when an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by

showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights. We further hold that an accused ..., having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges or conversations with the police. (Footnote deleted)

Id. at 484–85, 101 S.Ct. at 1884, 1885.

In the present case, the City of Pittsburgh Police and the F.B.I. conducted what was termed an "interview" of appellant, after he had invoked his right to counsel. (See N.T. Suppression, p. 465.)

The majority seeks to avoid the mandate of *Edwards*, supra, by relying on the earlier Pennsylvania cases, *Commonwealth v. Rose*, 265 Pa.Super. 159, 401 A.2d 1148 (1979), and *Commonwealth v. Grandison*, 449 Pa. 231, 296 A.2d 730 (1972). Both cases are distinguishable from the instant one.

The court in *Grandison* stated that it believed that questioning of the defendant was justified despite his having elected to remain silent, because of a "substantial change in circumstances." Those circumstances included finding out the identity of the defendant and learning that he had been charged with other crimes. He was confronted with those matters. Not only do such circumstances not exist in this case, it is important to note *Grandison* predates the Supreme Court's *Edwards* decision by nine years. The *Edwards* mandate is clear.

In *Rose*, the court addressed the issue of whether an admission obtained when a defendant was shown a ballistic report was admissible. In that case, the police had confronted the defendant with evidence, but the majority was careful to note that "after appellant decided to remain silent no interrogation took place." Id., 265 Pa.Superior Ct. at 168, 401 A.2d at 1153.

In the present case, on the other hand, questions were asked of appellant. (See n.8, suppression generally 465–470, 576–580, esp. 467.)

The interview should not have been commenced given appellant's earlier invocation of his rights. Furthermore, the majority notes that during this interview appellant indicated that he wished to say no more; "he was then informed that he could discontinue the conversation whenever he so wished." The testimony of the officers present at the interview was in pertinent part:

> And he was told that he had the right to stop at any time and leave. We then told him that it would be to his benefit to—well, it would be to our benefit to get the other individual identified, and that we were asking his cooperation due to the fact that we had certain evidence which implicated him, to continue on with the statement. And so, he would then come over, sit down and begin his statement again.

N.T. Suppression, 467.

*     *     *     *     *     *

> Mr. Harris indicated then that's all he wanted to say, and he began to indicate he wanted to walk out, and he proceeded to the door. And we indicated to him that we would like him to reconsider and tell us who else was involved in the robbery.

N.T. Suppression, 470.

In *Miranda v. State of Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the Supreme Court wrote:

> Once warnings have been given, the subsequent procedure is clear. If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. At this point he has shown that he intends to exercise his Fifth Amendment privilege; any statement taken after the person invokes his privilege cannot be other than the product of compulsion, subtle or otherwise. 384 U.S. at 474, 86 S.Ct. at 1627.

Incriminating statements made after appellant attempted to end the interview should have been suppressed not only because the interview session should not have been commenced, but also because of the violations of *Miranda* that occurred during the interview.