J-S63037-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| JAMES MICHAEL FLINT, | : | |
| | : | |
| Appellant | : | No. 2928 EDA 2014 |

Appeal from the Judgment of Sentence September 18, 2014
in the Court of Common Pleas of Chester County,
Criminal Division, No. CP-15-CR-0000020-2014

BEFORE:  DONOHUE, MUNDY and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:          **FILED December 22, 2015**

James Michael Flint ("Flint") appeals from the judgment of sentence imposed following his convictions for two counts of robbery, and one count each of criminal attempt (theft), simple assault, recklessly endangering another person ("REAP") and possession of an instrument of crime.[1]  We affirm.

On December 24, 2013, Carlos Julian Primo ("Primo") was in his driveway getting ready to leave for work.  Flint approached Primo, held a knife to his throat and demanded money.  As Flint and Primo struggled, Primo cut his hand on the knife in his efforts to disarm Flint.  Primo's brothers heard the fight and ran outside to help.  One brother called 911, and together they were able to restrain Flint until the police arrived.

---

[1] 18 Pa.C.S.A. §§ 3701(a)(1)(ii), 901, 2701, 2705, 907.

Thereafter, Officer Ronald Simril ("Officer Simril") and his partner arrived on the scene. Officer Simril found the three brothers holding Flint face-down on the ground. Officer Simril then arrested Flint.

Following a jury trial, Flint was convicted of the above-mentioned crimes. The trial court sentenced Flint to 7½ to 15 years in prison on one of the robbery convictions, a consecutive term of 1 to 2 years in prison on the REAP conviction, and a consecutive term of 1 to 2 years in prison on the possession of an instrument of crime conviction.[2] Flint filed a timely Notice of Appeal and a court-ordered Pennsylvania Rule of Appellate Procedure 1925(b) Concise Statement of Matters Complained of on Appeal.

On appeal, Flint raises the following questions for our review:

I. Did the [trial c]ourt err in denying [Flint's] [M]otion for mistrial after Officer [] Simril testified that he "recognized [] Flint right away," thus alluding to prior police [or] criminal contact with [] Flint?

II. Did the [trial c]ourt err in sentencing [] Flint to a consecutive 1-2 year sentence for [REAP] in that it merges with [r]obbery?

Brief for Appellant at 8.

In his first claim, Flint argues that the trial court erred in denying his Motion for mistrial based on Officer Simril's testimony that he recognized Flint "right away." *Id.* at 10-13. Flint claims that, based on Officer Simril's statement, the jury could infer that Officer Simril recognized Flint due to

---

[2] The trial court stated that the remaining convictions merged for the purpose of sentencing.

prior criminal conduct. *Id.* at 12. Flint argues that such an inference constituted prejudice. *Id.* at 12-13.

"[A] mistrial is required only when an incident is of such a nature that its unavoidable effect is to deprive the appellant of a fair and impartial trial." ***Commonwealth v. Lease***, 703 A.2d 506, 508 (Pa. Super. 1997). It is within the trial court's discretion to determine whether a defendant was prejudiced by the incident forming the basis of a motion for a mistrial. *Id.* On appeal, our standard if review is whether the trial court abused that discretion. ***Commonwealth v. Stafford***, 749 A.2d 489, 500 (Pa. Super. 2000).

"It is well-settled that evidence of crimes unrelated to the charge for which a defendant is being tried is generally inadmissible." ***Commonwealth v. Vazquez***, 617 A.2d 786, 787 (Pa. Super. 1992). "Nor can indirect testimony[,] from which a jury could reasonably infer that a defendant had been involved in prior criminal activity[,] be admitted into evidence in order to convict an accused[,] and if such is done the accused is entitled to a new trial." ***Commonwealth v. Sanders***, 442 A.2d 817, 818 (Pa. Super. 1982). "However, not all improper references to criminal acts require the award of a new trial…. [T]he extreme remedy of a mistrial is not automatically required if it is determined that the inference of prior criminality was innocuous…." ***Vazquez***, 617 A.2d at 787-88 (citations omitted).

> [T]he alleged prejudicial comments must be evaluated with regard to the circumstances of each trial, including, but not limited to: the nature of the comment, the person to whom the alleged prejudicial comment was directed, the identity of the person making the comment, and if a witness, the importance of that witness'[s] testimony to either the Commonwealth or the defense's case, and whether the court gave immediate cautionary instructions if it deemed the remark prejudicial.

***Commonwealth v. Grant***, 387 A.2d 841, 844 (Pa. 1978).

At trial, Officer Simril testified that after he had placed Flint in handcuffs, he stood him up and shined his flashlight in Flint's face because Primo wanted to see who had attacked him. N.T., 7/14/14, at 36-37. Officer Simril testified that "[he] recognized Mr. Flint right away." N.T., 7/14/14, at 37.

After the Commonwealth had asked another question, Flint's trial counsel requested a sidebar and moved for a mistrial based on Officer Simril's testimony. ***Id.*** at 37. The trial court excused the jury while the court asked Officer Simril additional questions regarding his previous contacts with Flint. ***Id.*** at 38-40. With defense counsel's agreement, the trial court then allowed the Commonwealth to seek clarification from Officer Simril regarding his previous statement in front of the jury. ***See id.*** at 38-39. After the jury returned to the courtroom, the Commonwealth asked Officer Simril several more questions before asking Officer Simril how he had recognized Flint. ***See id.*** at 41-45. Officer Simril testified that he recognized Flint "[f]rom seeing him around town." ***Id.*** at 45.

Here, Officer Simril did not testify that he knew Flint from previous criminal incidents. He merely stated that he recognized Flint, and later clarified that he recognized Flint from seeing him around town. *See* Trial Court Opinion, 2/2/15, at 6 n.2 (noting that "the area where this incident took place is a small community[, ] and it would not be uncommon for a police officer to recognize an individual from town.") (quotation marks omitted); *see also Sanders*, 442 A.2d at 818 (stating that "[m]erely because a police officer knows someone … does not suggest that the person has been engaged in prior criminal activity. A policeman may know someone because they reside in the same neighborhood or for any other number of reasons."). Moreover, Officer Simril's testimony that he recognized Flint "right away" was an isolated statement made in passing, which was later clarified. *See Commonwealth v. Harris*, 443 A.2d 851, 855 (Pa. Super. 1982) (holding that the trial court did not abuse its discretion by denying a motion for mistrial where alleged prejudicial statement was "an isolated passing reference volunteered by the witness and not responsive to the question."); *see also Commonwealth v. Maxwell*, 478 A.2d 854, 857 (Pa. Super. 1984) (stating that potentially prejudicial testimony by a detective did not warrant a mistrial because it "could have been cured by an appropriate explanation or cautionary

instruction.").[3] Thus, Officer Simril's testimony did not deprive Flint of a fair trial, and Flint's first claim is without merit

In his second claim, Flint contends that the trial court erred by not merging the offenses of robbery and REAP for sentencing purposes. Brief for Appellant at 13-17. Flint claims that these offenses must merge because they arose from a single criminal act. *Id.* at 15. Further, Flint argues that the act of placing a knife at the victim's throat satisfies the elements of both offenses because the act placed Primo in fear of immediate serious bodily injury, and actually placed Primo in danger of serious bodily injury. *Id.* at 16. In support of his position, Flint relies upon our Supreme Court's plurality decision in *Commonwealth v. Jones*, 912 A.2d 815 (Pa. 2006) (plurality). Brief for Appellant at 16-17.

"A claim that crimes should have merged for sentencing purposes raises a challenge to the legality of the sentence." *Commonwealth v. Quintua*, 56 A.3d 399, 400 (Pa. Super. 2012). "Therefore, our standard of review is *de novo* and our scope of review is plenary." *Id*.

Whether offenses merge at sentencing implicates Section 9765 of the Sentencing Code, which provides the following:

**§ 9765. Merger of sentences**

---

[3] Here, Flint did not seek a cautionary instruction. *See Commonwealth v. Bryant*, 855 A.2d 726, 739 (Pa. 2004) (stating that a "[f]ailure to request a cautionary instruction upon the introduction of evidence constitutes a waiver of a claim of trial court error in failing to issue a cautionary instruction.").

No crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense. Where crimes merge for sentencing purposes, the court may sentence the defendant only on the higher graded offense.

42 Pa.C.S.A. § 9765.[4]

In [] **Jones**, our Supreme Court addressed the issue of merger pursuant to section 9765, but was unable to establish a consensus approach. … [T]he lead plurality opinion in **Jones** … adopted a "practical, hybrid approach" that required courts to "evaluate the statutory elements [of each crime], with an eye to the specific allegations leveled in the case." 912 A.2d at 822. Justice Newman wrote a dissent favoring the adoption of a strict statutory test in accordance with section 9765. **Id.** at 827 (Newman, J., dissenting) ("[T]he elements of these two crimes differ, and sentencing thus cannot be merged pursuant to our jurisprudence and the legislative intent as evidenced by 42 Pa.C.S.[A.] § 9765.").

**Commonwealth v. Jenkins**, 96 A.3d 1055, 1057 (Pa. Super. 2014)

(citation omitted).

Just three years later, our Supreme Court revisited its approach to merger. **See Commonwealth v. Baldwin**, 604 Pa. 34, 985 A.2d 830 (2009). In a majority decision, **Baldwin** adopted the **Jones** dissent's reasoning and held the plain language of Section 9765 reveals a legislative intent "to preclude the courts of this Commonwealth from merging sentences for two offenses that are based on a single criminal act unless all of the statutory elements of one of the offenses are included in the statutory elements of the other." **Id.** at 45, 985 A.2d at 837. **Baldwin** rejected the "practical, hybrid approach" advocated in the lead **Jones** plurality opinion. **Id.** at 42, 912 A.2d at 835. Instead, **Baldwin** held that when each offense contains an element the other does not, merger is inappropriate.

**Quintua**, 56 A.3d at 401.

---

[4] Section 9765 became effective on February 7, 2003.

Here, a single criminal act resulted in Flint violating the REAP and robbery statutes. ***See, e.g.,*** N.T., 9/18/14, at 8 (wherein the Commonwealth acknowledges that the REAP charge resulted from the "same conduct" as the robbery charge). Therefore, we must determine whether all of the statutory elements of REAP are included in the statutory elements of robbery. The Crimes Code defines REAP as follows: "A person commits a misdemeanor of the second degree if he *recklessly* engages in conduct which places or may place another person in danger of death or serious bodily injury." 18 Pa.C.S.A. § 2705 (emphasis added). The Crimes Code defines robbery, in relevant part as follows: "A person is guilty of robbery if, in the course of committing a theft, he … threatens another with or intentionally puts him in fear of immediate serious bodily injury." ***Id.*** § 3701(a)(1)(ii).

This Court has previously held that REAP and robbery merge for sentencing purposes. ***See, e.g., Commonwealth v. Robinson***, 549 A.2d 977, 979 (Pa. Super. 1988); ***Commonwealth v. Walls***, 449 A.2d 690, 693 (Pa. Super. 1982); ***Commonwealth v. Eberts***, 422 A.2d 1154, 1156 (Pa. Super. 1980). However, because these cases were decided prior to the enactment of section 9765, they do not support a finding of merger. ***See Baldwin***, 985 A.2d at 835 (stating that "jurisprudence prior to the enactment of Section 9765 simply do not support his claim for relief."); ***Commonwealth v. Calhoun***, 52 A.3d 281, 285 (Pa. Super. 2012) (stating that "[s]ection 9765, particularly as elucidated by our Supreme Court in

***Baldwin***, evinces a clear intent to confine merger for sentencing purposes to the defined condition that all of the statutory elements of one of the offenses are included in the statutory elements of the other.").

Based on a comparison of the two offenses, it is clear that the offenses of REAP and robbery cannot merge for sentencing purposes. Indeed, robbery does not require a *mens rea* of recklessness, which is an element of REAP. ***See Commonwealth v. Weigle***, 949 A.2d 899, 907 (Pa. Super. 2008) (stating that "the thrust of the REAP statute is to provide criminal sanctions for the reckless creation of a risk of death or serious bodily injury."); ***see also Commonwealth v. Payne***, 868 A.2d 1257, 1262 (Pa. Super. 2005) (noting that aggravated assault requires a mental state that robbery does not, and, therefore, the offenses do not merge). Moreover, the REAP statute does not impact on the state of mind of the victim, while the robbery statute is written from the victim's perspective, and requires that the victim be *placed in fear* of immediate serious bodily injury. ***See Commonwealth v. Cancilla***, 649 A.2d 991, 994 (Pa. Super. 1994) (stating that to support a REAP conviction, conduct in question must create an actual, not merely perceived, danger); ***see also Weigle***, 949 A.2d at 907 (holding REAP is not a *cognate* offense to robbery because it "could be accomplished without committing a robbery, and a robbery could be accomplished without committing [an offense] involving danger to the person."). Additionally, unlike robbery, REAP does not require proof of theft.

*See Weigle*, 949 A.2d at 907 (acknowledging that while REAP and robbery are intended to protect part of the same harm, "*i.e.*, protection against infliction of bodily injury or fear thereof[,] the robbery statute contains the additional goal of protection of property which REAP does not). Thus, each offense requires proof of an element that other does not, and cannot merge for sentencing purposes. *See Payne*, 868 A.2d at 1262-63 (concluding that aggravated assault did not merge with robbery arising from the same criminal conduct, where robbery did not require that the defendant cause serious bodily injury by acting intentionally, knowingly or recklessly, and aggravated assault did not require proof of theft). We thus conclude Flint's merger issue to be unavailing.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/22/2015