J-S45011-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA,

Appellee

v.

RAHMAIRE HAYES,

Appellant

IN THE SUPERIOR COURT
OF
PENNSYLVANIA

No. 696 EDA 2017

Appeal from the Judgment of Sentence Entered September 26, 2016
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0004174-2015

BEFORE:  BENDER, P.J.E., MURRAY, J., and PELLEGRINI, J.[*]

MEMORANDUM BY BENDER, P.J.E.:          **FILED OCTOBER 25, 2019**

Appellant, Rahmaire Hayes, appeals from the judgment of sentence of 4 to 8 years' incarceration, followed by 4 years' probation, imposed after he was convicted of robbery, aggravated assault, and related offenses. Appellant challenges the court's denial of his pretrial motion to suppress evidence, as well as the sufficiency of the evidence to sustain his aggravated assault conviction. After careful review, we vacate Appellant's judgment of sentence and remand for a new trial.

The trial court summarized the facts of this case, as follows:

Early on December 20[], 2014[,] Complainant, Eric Walsh, was walking to the Market-Frankford SEPTA line after work. Notes of Testimony ("N.T."), 07/21/2016, at 13-15. Per his job duties as a beverage sales representative, he visited four or five bars and

---

[*] Retired Senior Judge assigned to the Superior Court.

had a single cocktail at each location. *Id.* at 13-14[,] 33. Near the 1700 block of JFK Boulevard[,] Appellant approached and engaged Complainant in a conversation requesting subway tokens. *Id.* at 15-16. The two walked for a short distance and Complainant stopped to give Appellant a subway token. Complainant turned away and Appellant physically attacked him, causing him to black out. *Id.* at 17-18. When the Complainant regained consciousness, his belongings were gone, and he [had] sustained injuries, including cuts on his ears and a laceration on the back of his head. *Id.* at 18-21. Complainant's missing items included cash, a cellular phone, his wallet containing debit and credit cards, photos, social security card, driver's license, and a Breitling watch. *Id.* Complainant was transported to Hahnemann Hospital via ambulance, where he received a tetanus shot, a CT scan, and was placed on concussion protocol. *Id.* Once released from the hospital, Complainant reported his effects missing. *Id.* at 24. Several unauthorized transactions were noted, all occurring on [December 20, 2014], at various 7-Eleven and Wawa locations within several blocks of the incident at 1700 JFK Boulevard. The total of all transactions came to $670.80[,] as noted in the police report following Appellant's arrest.

A video was later published on the Philadelphia Police Department's … YouTube page, depicting unidentified individuals at several convenience store locations where the card was used; the Philadelphia Police Department requested information on the people in the video. Notes of Motion Testimony ("N.M.T."), 03/21/2016, at 7-8. SEPTA Officer [Derrick] Gordon saw the video on January 8th, 2015[,] and later that day he saw and recognized Appellant from the video and placed him in an investigatory detention for identification purposes. *Id.* Officer Gordon contacted Philadelphia Police and spoke with the lead investigator, Detective [Anthony] Anderson, who requested Appellant be brought to Central Detectives for identification purposes. *Id.* With Appellant unable to present any personal ID, Officer Gordon handcuffed Appellant and placed him in the vehicle to be brought to Detective Anderson. *Id.* Appellant was interviewed and released. A warrant for his arrest was later issued on January 27[, 2015]. *Id.* at 18. Appellant was arrested on March 12[,] 2015.

Trial Court Opinion (TCO), 11/14/18, at 2-3.

Appellant was charged with single counts of robbery, 18 Pa.C.S. § 3701(a)(1)(ii); aggravated assault, 18 Pa.C.S. § 2702 (a); conspiracy, 18 Pa.C.S. § 903; theft by unlawful taking, 18 Pa.C.S. § 3921(a); receiving stolen property, 18 Pa.C.S. § 3925(a); simple assault, 18 Pa.C.S. § 2701(a); and recklessly endangering another person, 18 Pa.C.S. § 2705. He was also charged with six counts of forgery, 18 Pa.C.S. § 4101(a)(1), and seven counts of access device fraud, 18 Pa.C.S. § 4106(a)(1).

Prior to trial, Appellant filed a motion to suppress the statement he provided to police during the interview on January 8, 2015. Appellant contended, *inter alia*, that Officer Gordon had arrested him without probable cause and, thus, his statement given just after that illegal arrest must be suppressed as 'fruit of the poisonous tree.' On March 21, 2016, a suppression hearing was conducted, at which Officer Gordon was the sole witness. At the close of the hearing, the court found that the officer possessed probable cause to support the arrest, and it denied Appellant's suppression motion.

Appellant proceeded to a non-jury trial, at the close of which the court granted his motion for judgment of acquittal regarding his six counts of forgery, but convicted him of the remaining fourteen charges. On September 26, 2016, Appellant was sentenced to the aggregate term set forth *supra*. He filed a timely post-sentence motion, which was denied by operation of law on January 27, 2017. Appellant then filed a timely notice of appeal, and he also complied with the trial court's order to file a Pa.R.A.P. 1925(b) concise

statement of errors complained of on appeal. The court filed its Rule 1925(a)

opinion on November 14, 2018.

On appeal, Appellant states three issues for our review, which we have

reordered for ease of disposition:

> 1. Is the evidence insufficient to sustain a conviction of [a]ggravated [a]ssault where Appellant did not intend to cause serious bodily injury and there was no serious bodily injury inflicted?
>
> 2. Did the trial court err by denying Appellant's [m]otion to [s]uppress where Appellant's statement was the fruit of an illegal arrest not supported by probable cause?
>
> 3. Did the trial court err by denying Appellant's [m]otion to [s]uppress where Appellant's statement was the fruit of an illegal arrest as the arresting officer lacked authority to arrest Appellant?

Appellant's Brief at 5.

In assessing Appellant's first issue, we begin by setting forth our

standard of review of a challenge to the sufficiency of the evidence:

> In reviewing a sufficiency of the evidence claim, we must determine whether the evidence admitted at trial, as well as all reasonable inferences drawn therefrom, when viewed in the light most favorable to the verdict winner, are sufficient to support all elements of the offense. *Commonwealth v. Moreno,* 14 A.3d 133 (Pa. Super. 2011). Additionally, we may not reweigh the evidence or substitute our own judgment for that of the fact finder. *Commonwealth v. Hartzell,* 988 A.2d 141 (Pa. Super. 2009). The evidence may be entirely circumstantial as long as it links the accused to the crime beyond a reasonable doubt. *Moreno, supra* at 136.

*Commonwealth v. Koch*, 39 A.3d 996, 1001 (Pa. Super. 2011).

Appellant challenges only his conviction for aggravated assault. "A

person is guilty of aggravated assault if he … attempts to cause serious bodily

injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life...." 18 Pa.C.S. § 2702(a)(1). "Serious bodily injury" is defined as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S. § 2301.

Here, Appellant claims that he did not intend to cause, nor did he actually cause, serious bodily injury to the victim. In disagreeing with this claim, the trial court reasoned:

> Complainant lost consciousness and when he came-to, [he] had an inch-long laceration on the back of his scalp, as well as a split ear lobe and swollen jaw and glands. As seen in multiple cases, loss of consciousness can contribute to a finding of serious bodily harm. Further, EMTs noted slurred speech and an unsteady gait upon arrival in the ambulance. Complainant was given a tetanus shot, a CT scan, and placed on concussion protocol due to his loss of consciousness. According to his testimony, he continues to suffer from memory loss and headaches as a result of the incident. Under the statute and case law, Complainant suffered serious bodily injury at the hands of Appellant. Appellant's argument of insufficient evidence is without merit.

TCO at 9-10.

We agree with the court's conclusion. Notably, the victim lost consciousness due to the severity of Appellant's attack. Additionally, although the victim testified that his memory loss and continuing headaches are minor, **see** N.T. Trial at 30, his testimony that he suffers from these issues was sufficient to establish 'protracted loss or impairment of the function' of his brain. Therefore, the evidence was sufficient to prove Appellant inflicted

- 5 -

serious bodily injury on the victim that constituted aggravated assault. ***See***

***Commonwealth v. Kinney***, 157 A.3d 968, 973 (Pa. Super. 2017) (upholding

Kinney's conviction for aggravated assault where he repeatedly struck and

kicked the victim in the head, knocking the victim unconscious and resulting

in four of the victim's teeth falling out and swelling of his eye and lips).

In Appellant's next issue, he challenges the court's denial of his pretrial

motion to suppress. According to Appellant, Officer Gordon lacked probable

cause to arrest him without a warrant, and the statement he provided to police

was fruit of that illegal arrest. Appellant stresses that,

> [Officer Gordon] admitted that [Appellant] was not doing anything
> at all illegal, and the only reason he arrested [Appellant] was for
> identification purposes. Specifically, Officer Gordon had seen a
> Philadelphia Police video, pertaining to a robbery, in which he
> recognized [Appellant]. However, the video did not depict any
> footage of the robbery but showed men inside [convenience]
> stores and a narrative that requested their identity. Officer
> Gordon had no knowledge of the robbery and whether [Appellant]
> was involved. Thus, Officer Gordon did not have probable cause
> that [Appellant] committed a crime, and the ensuing arrest was
> illegal.

Appellant's Brief at 11 (citations to the record omitted).

For the reasons stated *infra*, we agree with Appellant. Preliminarily, we

note:

> An appellate court's standard of review in addressing a
> challenge to the denial of a suppression motion is limited to
> determining whether the suppression court's factual findings are
> supported by the record and whether the legal conclusions drawn
> from those facts are correct. Because the Commonwealth
> prevailed before the suppression court, we may consider only the
> evidence of the Commonwealth and so much of the evidence for
> the defense as remains uncontradicted when read in the context
> of the record as a whole. Where the suppression court's factual

findings are supported by the record, the appellate court is bound by those findings and may reverse only if the court's legal conclusions are erroneous. Where the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to plenary review.

*Commonwealth v. Smith*, 164 A.3d 1255, 1257 (Pa. Super. 2017) (internal brackets omitted).

In reviewing the specific arguments presented by Appellant, we are guided by the following:

In order to be constitutionally valid under the Fourth Amendment to the United States Constitution, a warrantless arrest must be supported by probable cause. Where probable cause to arrest does not exist in the first instance, any evidence seized in a search incident to arrest must be suppressed. It is well settled that in determining whether probable cause exists to justify a warrantless arrest, the totality of the circumstances must be considered.

\*\*\*

Under the totality of the circumstances test, as refined by more recent cases, probable cause exists where the facts and circumstances within the officer's knowledge are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed. Mere suspicion is not a substitute for probable cause. The totality of the circumstances test dictates that we consider all the relevant facts, when deciding whether the warrantless arrest was justified by probable cause.

*In Interest of O.A.*, 717 A.2d 490, 495 (Pa. 1998) (internal citations omitted).

Here, at the close of the suppression hearing, the trial court made the following findings of fact, which are supported by the suppression hearing testimony of Officer Gordon, and are not objected to by either party on appeal:

THE COURT: Officer Derrick Gordon, who is a SEPTA police officer, presently working with the K-9 Unit who has nine years of experience with the SEPTA police, who has also worked plain clothes and tactical, testified that he was personally familiar with [Appellant] in this case and had contact with him numerous times. He emphasized he was very familiar with [Appellant] and [Appellant] … had issued, or rather the officer, had issued citations to [Appellant] on numerous occasions.

On the morning of January 8th, Officer Gordon testified that he reviewed a You[T]ube video that he saw from the Philadelphia Police Department that depicted suspects of a couple of robberies.[1] He watched this video and --

**MR. DIMUZIO**: Your Honor, can I be clear? It wasn't a couple. It was one robbery. Those were videos of people entering the store. None of those stores were robbed.

**THE COURT**: Well, okay. But the videos depicted suspects --

**MR. DIMUZIO**: Correct.

**THE COURT**: -- who were wanted for robberies.

**MR. DIMUZIO**: One robbery.

**THE COURT**: Or a robbery. The suspects who were seen on this You[T]ube video were shown. Officer Gordon testified that he himself identified one of the suspects as [Appellant].

---

[1] We note that the video was entered into evidence by the Commonwealth at the suppression hearing and viewed by the trial court, but it is not contained in the certified record. Consequently, the Commonwealth argues that we should deny Appellant relief because "[i]t was, of course, [his] burden as the appellant to provide this Court with a complete record." Commonwealth's Brief at 7 (citing, *inter alia*, **Commonwealth v. Spotti**, 94 A.3d 367, 381 (Pa. Super. 2014)). We decline to deny Appellant relief because he failed to produce for this Court a Commonwealth's exhibit *that the Commonwealth admits it cannot even locate*. **See** Commonwealth's Brief at 7 ("That video is not part of the certified record on appeal — nor has the Commonwealth been able to locate a copy of it."). Reaching this result would invite the Commonwealth to lose or destroy pertinent exhibits in order to prevent appellate relief for criminal defendants.

On January 8[], 2015, while on duty, he saw [Appellant] … and stopped him because of the video he saw, the You[T]ube video. [Appellant] did not have any identification on him. [Officer Gordon] contacted the investigating detective and took [Appellant] to Central Detectives for possible ID pertaining to this robbery. None of the video clips depicted an actual robbery at the time. When he, [Appellant], was stopped, he was not doing anything illegal.

**MR. HOWELL**: May I clarify one thing on that? It didn't depict a robbery, but it had a narrative.

**THE COURT**: It did. The video did provide a narrative indicating the robbery that occurred and that the individuals in the video were involved. After bringing [Appellant] to Central Detectives, he was properly **Mirandized**[2], as stipulated by both counsel, and a statement was given. A statement was also taken [from] … Police Officer Gordon as well.

\*\*\*

The [c]ourt finds that probable cause existed for the following **factors**: Officer Gordon testified credibly that he was very familiar with [Appellant]. He reviewed the video and believed the individual depicted in the video to be [Appellant].

While the questioning and cross-examination brought the issue of identification, at no point did the testimony of Officer Gordon question the identification of [Appellant], but [Appellant] was being brought in for possible identification by the detectives as the individual, or confirmation as the individual, in the video.

This is no different than matching flash information, except that the flash information is actually pictured and available for comparison. So[,] the [c]ourt finds there was probable cause to stop and detain [Appellant]. The motion to suppress is denied.

N.T. Suppression Hearing at 33-37 (emphasis in original).

Initially, we note that the court concludes in its Rule 1925(a) opinion,

and neither party disputes, that Appellant was effectively arrested by Officer

---

[2] **Miranda v. Arizona**, 384 U.S. 436 (1966).

Gordon when the officer handcuffed, searched, and then transported Appellant to the police station. *See id.* at 8, 15 (Officer Gordon's testifying he handcuffed, searched, and transported Appellant to the police station). Clearly, Officer Gordon's actions constituted an arrest, as he subjected Appellant to his will and control. *See Commonwealth v. Hannon*, 837 A.2d 551, 554 (Pa. Super. 2003) ("Arrest is an act that indicates an intention to take a person into custody or that subjects the person to the will and control of the person making the arrest.") (citation and emphasis omitted).

Because Officer Gordon arrested Appellant, and did so without a warrant, we must next assess whether he had probable cause to do so. *See id.*

> Probable cause is determined by considering the totality of the circumstances. *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Under the totality of the circumstances, a police officer must make a practical common sense decision whether, given all of the circumstances known to him at that time, including hearsay information, there is a fair probability that a crime was committed and that the suspect committed the crime.

*Id.* at 554–55 (one internal citation omitted).

Interestingly, in its Rule 1925(a) opinion, the trial court changes its position and concludes that "[t]he record as it stands does not support a finding of probable cause, as there was no crime occurring at the time of the interaction, nor in the videos placed on the [Philadelphia Police Department's] YouTube page…." TCO at 5. In response, the Commonwealth counters that the officer had probable cause to arrest because "[Appellant] was caught on video entering a series of convenience stores at the same time that the

- 10 -

victim's bank card was used without his authorization to withdraw money from his account[,]" which "included instances in which hundreds of dollars were withdrawn shortly after two o'clock in the morning, less than twenty minutes after and only blocks away from the scene of the robbery." Commonwealth's Brief at 8.

However, the facts cited by the Commonwealth were established during Appellant's trial, through the testimony of the victim and Detective Anderson. **See id.** (citing N.T. Trial at 26-29, 72-73). Our Supreme Court has held that appellate courts may not look "beyond the evidentiary record presented at the pre-trial hearing in examining a denial of suppression…." **In re L.J.**, 79 A.3d 1073, 1087 (Pa. 2013).

Limiting our review to the suppression record, we agree with the trial court that Officer Gordon did not have probable cause to arrest Appellant. Officer Gordon acknowledged at the suppression hearing that he was not involved in the initial investigation of the robbery. N.T. Suppression Hearing at 12. Thus, he had no knowledge of the facts and circumstances of the crime that would lead him to reasonably conclude that Appellant had committed the offense.

Instead, the officer had merely observed a video of Appellant and a cohort "entering a store[,]" **id.**, and learned from a narrative on the video that Appellant was a suspect in a robbery. Thus, as the trial court observed at the suppression hearing, Officer Gordon essentially received information akin to a police bulletin. This Court has stated:

- 11 -

> [A] police officer may rely upon information which is broadcast over a police radio in order to justify an investigatory stop and subsequent arrest where the Commonwealth can establish either (1) **that probable cause existed for issuing the bulletin** or (2) that new information disclosed during the stop gave rise to probable cause for arrest.

*Commonwealth v. Prengle*, 437 A.2d 992, 994 (Pa. Super. 1981) (emphasis added). In this case, the Commonwealth presented *no* evidence to demonstrate that probable cause existed for issuing the bulletin, *i.e.*, the YouTube video. Notably, the lead investigator in the case, Detective Anderson, was not called as a witness at the suppression hearing to explain what information he knew prior to releasing the video that led him to deem Appellant a suspect in the robbery. Therefore, the Commonwealth failed to establish that the detective possessed probable cause to issue the bulletin on which Officer Gordon premised Appellant's arrest. Consequently, we conclude that Appellant's arrest was not supported by probable cause and was, therefore, illegal.

Having concluded Appellant's arrest was illegal, "the question remains whether or not the statements and evidence obtained subsequent to that illegal arrest were so far removed from that illegal arrest as to vitiate any taint arising from the initial illegal arrest." *Commonwealth v. Brooks*, 364 A.2d 652, 657 (Pa. 1976) (citing *Wong Sun v. United States*, 371 U.S. 471 (1963)). The trial court concluded, in its Rule 1925(a) opinion, that Appellant's statement was sufficiently cleansed of the taint from his illegal arrest because the police did not use coercive tactics in interviewing Appellant,

he was provided *Miranda* warnings, and he knowingly, intelligently, and voluntarily waived his rights before speaking to police. *See* TCO at 6-7.

We disagree. In *Brooks*, our Supreme Court explained:

The test announced by the United States Supreme Court in *Wong Sun* is:

"whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." [*Wong Sun*,] 371 U.S. at 488, 83 S.Ct. at 417, 9 L.Ed.2d at 455.

The challenged evidence may be purged of the taint of the primary illegality only if it results from 'an intervening independent act of a free will,' *Wong Sun, supra*, 371 U.S. at 486, 80 S.Ct. at 416, 9 L.Ed.2d at 454, or if the connection between the arrest and the evidence has 'become so attenuated as to dissipate the taint.' *Id.* at 491, 83 S.Ct. at 419, 9 L.Ed.2d at 457.

Two factors significant to the determination of the relationship between an illegal arrest and subsequent confession have been articulated by the Third Circuit of the United States Court of Appeals in *Commonwealth ex rel. Craig v. Maroney*, 348 F.2d 22, 29 (3d Cir. 1965), cert. den. 384 U.S. 1019, 86 S.Ct. 1966, 16 L.Ed.2d 1042 (1966). These factors are:

'(a) the proximity of an initial illegal and custodial act to the procurement of the confession; and

(b) the intervention of other circumstances subsequent to an illegal arrest which provide a cause so unrelated to that initial illegality that the required evidence may not reasonably be said to have been directly derived from, and thereby tainted by, that illegal arrest.'

We note that, having failed to establish the legality of the initial arrest, the prosecution must bear the burden of showing that any evidence obtained subsequent to it has been obtained by means sufficiently distinguishable from the initial illegality so as to be purged of the primary taint rather than having been come by by

exploitation of that illegality. [*In re*] *Betrand*, … 303 A.2d 486 ([Pa.] 1973).

*Brooks*, 364 A.2d at 657.

In *Brooks*, the "appellant confessed less than three hours after the initial illegal arrest" and the only other intervening factor between the arrest and Brooks' confession was a polygraph examination taken by Brooks. *Id.* at 658. Our Supreme Court concluded that these facts were not "sufficient to break the chain of circumstances between the illegal arrest and the challenged evidence…." *Id.*

We agree with Appellant that *Brooks* controls in this case. *See* Appellant's Brief at 12-13. Here, Officer Gordon illegally arrested Appellant and transported him to the police station. The Commonwealth offered no evidence to establish how much time passed between Appellant's arrival at the station and his statement to police and, therefore, this factor cannot be weighed in the Commonwealth's favor. Additionally, the Commonwealth did not present evidence of any intervening factor between Appellant's arrest and interrogation, except for the providing of his *Miranda* rights and his waiver thereof. However, even if that waiver was knowing, intelligent, and voluntary — and no coercive tactics were employed by the interviewing officers — these circumstances were not sufficient, in and of themselves, to cleanse Appellant's statement from the taint of his illegal arrest. *See Brooks, supra*; *see also Commonwealth v. Yocham*, 375 A.2d 325, 329–30 (Pa. 1977) ("Where the primary taint results from an illegal arrest and the confession is obtained through interrogation occurring during the period of custody resulting from

- 14 -

that arrest we have not been willing to find a dissipation of the taint solely because proper warnings were given prior to the interrogation. Further, our decisions have held that the mere absence of evidence of police coercion is not sufficient to justify the conclusion that the accused's statement was the product of free will sufficient to overcome the taint of the unlawful arrest."). Accordingly, Appellant's statement was not admissible, and the trial court erred by denying his motion to suppress it.[3]

Consequently, we vacate Appellant's judgment of sentence and remand for a new trial.

Judgment of sentence vacated. Case remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/25/19

---

[3] In light of our disposition of Appellant's second issue, we need not address his third claim that Officer Gordon lacked jurisdiction to arrest him.

- 15 -